**UNITED STATES of America**

v.

**Howard Emmett HORSLEY,
Charlotte D. Johnson.**

**Crim. No. 85–79.**

United States District Court,
W.D. Pennsylvania,
Criminal Division.

Nov. 12, 1985.

A. Elliot McLean, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Kim William Reister, Pittsburgh, Pa., for defendant Horsley.

Stephen F. Capone, Pittsburgh, Pa., for defendant Johnson.

## OPINION

SIMMONS, District Judge.

The Defendants, Howard Emmett Horsley and Charlotte Johnson, have been charged in a seven count indictment with conspiracy to distribute and possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846; and with distributing and possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Only the Defendant Howard Horsley is charged in Counts 2, 3, and 4 of the indictment (distribution and possession with intent to distribute); both of the Defendants are charged in Count 1 of the indictment (conspiracy to distribute and possess with intent to distribute) as well as in Counts 5, 6, and 7 (distribution and possession with intent to distribute) of the indictment.

Both Defendants have filed numerous pre trial motions which have previously been heard and argued, and are now ready for decision by this Court. The Defendant Howard Horsley has filed the following motions: Motion for a Speedy Trial, Motion to Dismiss, Motion to Disclose Favorable Evidence, Motion to Disclose the Identity of an Informant, Motion for Pre Trial Hearing to Determine the Admissibility of Hearsay Statements of Co-Conspirator, Motion for Bill of Particulars, Motion for Disclosure of Jencks Material, and a Motion to Suppress. Defendant Horsley filed a second motion to dismiss the indictment, however, that motion was withdrawn by Horsley on October 22, 1985. The Defendant Charlotte Johnson has filed a Motion for Severance, Motion for Pre Trial Hearing to Determine Admissibility of Hearsay Statements of Co-Conspirator, and a Motion to Adopt Defendant Horsley's Motions to Dismiss and Suppress. Defendant Horsley

has also filed a Motion to Adopt Defendant Johnson's Motion for Severance.

## MOTION FOR A SPEEDY TRIAL

The Defendant Howard Horsley was indicted in the Western District of Pennsylvania by a federal grand jury on April 11, 1985. Defendant Horsley had previously been arrested December 12, 1984 on a warrant for state charges by City of Pittsburgh police officers, and on April 24, 1985, these state charges were *nolle prossed*. In this motion, the Defendant contends that the time for the commencement of the federal Speedy Trial Act, 18 U.S.C. § 3161 et seq., should be based on the date of his arrest on December 12, 1984, and not on the date of the federal indictment, April 11, 1985. The Defendant claims that the Speedy Trial Act has been violated, and he is entitled to the dismissal of the charges, if the December 12, 1984 arrest date is used as the relevant date in computing the time provisions of the Speedy Trial Act. The Defendant also argues that because the United States instituted the federal proceedings when there were only 47 days remaining on the state speedy trial period, it is improper for the United States to circumvent the state speedy trial periods by instituting these new federal proceedings. It is the Defendant's position that the state arrest on December 12, 1984 is the relevant date that must be used in computing the federal speedy trial requirements under section 3161 of the Speedy Trial Act.

The Speedy Trial Act requires that a Defendant be charged by indictment or information within 30 days of his arrest or the service of summons [18 U.S.C. § 3161(b)], and that trial commence within 70 days of either the filing of the indictment or the Defendant's appearance before a judicial officer, whichever event occurs last. [18 U.S.C. § 3161(c)(1)]. However, it is a federal arrest and not a state arrest which triggers the commencement of these time provisions. *United States v. Adams*, 694 F.2d 200 (9th Cir.1982); *United States v. Iaquinta*, 674 F.2d 260, 267 (4th Cir. 1982); *United States v. Leonard*, 639 F.2d 101 (2d Cir.1981). In order for the time limitations contained in section 3161 of the Speedy Trial Act to apply, the Defendant must be held on federal charges, and, thus, if a person is held by state authorities on a state charge, and then is turned over to federal authorities for federal prosecution, the date of that delivery into federal custody, and not the date of the state arrest, is the applicable date for purposes of the Speedy Trial Act. *United States v. Shahryar*, 719 F.2d 1522 (11th Cir.1983); *United States v. Tanu*, 589 F.2d 82 (2d Cir.1978).

 Here the Defendant was arrested by state officials on December 12, 1984, on state charges. The record indicates that there was no federal action or involvement in the state arrest, and the arresting police officers could not have been acting as "agents" of the federal government at the time they arrested Horsley on December 12, 1984. It is also clear that there has been no violation of the Pennsylvania Speedy Trial requirements, since the state charges were timely withdrawn prior to the Defendant's final state trial date. There has been no expiration of the time period permitted by the federal Speedy Trial Act, since it is the date of the federal indictment and not the date of the state arrest which triggers the time provisions contained in 18 U.S.C. § 3161. The Motion is without merit, and the Motion to Dismiss for Speedy Trial Violations will therefore be denied.

## MOTION FOR PRE TRIAL HEARING TO DETERMINE EXISTENCE OF CONSPIRACY

 Both of the Defendants have filed motions seeking a separate pre trial hearing to determine the existence of a conspiracy, in which this Court would determine the admissibility of co-conspirator statements. Before the statements of a co-conspirator may be presented to the jury, the Court must determine that the government has established the existence of the alleged conspiracy and the connection of each Defendant with it by a clear preponderance of the evidence, independent of the hearsay declarations. *United States v. Continen-*

*tal Group, Inc.,* 603 F.2d 444, 457 (3d Cir.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). In *United States v. Ammar,* 714 F.2d 238 (3d Cir. 1983), the Third Circuit has considered whether an in limine hearing should be preliminarily held so that the court can determine the existence of the alleged conspiracy. The Third Circuit in *Ammar, supra,* noted that the Fifth Circuit prefers a preliminary hearing in limine, while the Ninth Circuit declines to express a preference for the pre trial determination of the admissibility of co-conspirator statements. In *Ammar,* the Third Circuit declined to impose the requirement of the preliminary hearing, emphasized that the control of the order of proof at trial is within the discretion of the trial judge, and concluded that in the circumstances, it was not error or an abuse of discretion for the trial judge to have refused to hold a pre trial hearing. 714 F.2d at 247.

█ There is no justification in this case for holding a pre trial hearing on the question of the admissibility of co-conspirator statements. A pre trial hearing would be cumbersome, inefficient, and duplicative. This is not an unduly complex case which involves many defendants or lengthy and varied counts. This Court at trial will easily and efficiently be able to determine whether the prosecution has established the existence of the conspiracy which would then permit the use of the declarations of the co-conspirators. The motions of both Defendants will be denied.

## MOTION TO DISMISS INDICTMENT

The Defendant Howard Horsley has moved to dismiss the instant indictment, contending that it was sought by law enforcement officers of the Commonwealth of Pennsylvania in order to circumvent his Pennsylvania procedural and substantive constitutional rights. Horsley contends that the above-captioned indictment is one of a series of indictments where the City of Pittsburgh police have sought to utilize the United States District Court for the Western District of Pennsylvania for the prose-

cution of crimes which are de minimus and/or in cases where there is a violation of a defendant's rights under the Commonwealth of Pennsylvania. Defendant claims that the selection of the federal forum for these reasons constitutes prosecutorial misconduct which requires the dismissal of the indictment. The Defendant Charlotte Johnson has also adopted this Motion to Dismiss.

Defendant Horsley claims that the criminal information brought in state court and the indictment brought in the above-captioned case are duplicitous, and that the principle reason for this federal prosecution is to circumvent Horsley's rights under the Pennsylvania constitution and to avoid the suppression of the evidence and the dismissal of the state criminal action. At the hearing and argument held before this Court on July 3, 1985, the Defendant's attorney conceded that he had to show more than the mere fact that Horsley's case was being prosecuted in federal court, and that there were problems with the state court proceeding. (Tr. July 3, 1985 at 6). The Defendant, however, has not been able to show such a course of conduct on the part of the United States Attorney in adopting cases of this type.

The Assistant United States Attorney indicated at the July 3, 1985 hearing that the federal government assumed the prosecution of the above-captioned case because there was an on-going federal investigation concerning the Defendant's involvement in illegal drug trafficking, that Howard Horsley had long been identified as a major heroin trafficker, that the Defendant Horsley had a prior federal conviction for narcotics, and that it was felt that Defendant Horsley was a career type of criminal. The Assistant United States Attorney indicated that the United States asked to adopt the state case, and received the approval of the District Attorney, before any of the evidence was presented to the federal grand jury. (Tr. July 3, 1985 at 14–16). At the time that the state charges were withdrawn, there had been no allegations made

that the Pennsylvania speedy trial requirements had not been met.

■ The Defendants claim that the indictment in the above-captioned case is a form of prosecutorial misconduct since the indictment was brought for the purposes of circumventing state substantive and procedural rights. While it is true that there is prosecutorial misconduct and vindictiveness where the motive of the prosecution is to discourage or preclude a Defendant from exercising legal rights [*Jackson v. Walker*, 585 F.2d 139 (5th Cir.1978) ], in the instant case the conduct of the government in obtaining the indictment has not prevented or discouraged the Defendants from exercising any of their legal rights under federal or state law. The claim that substantive and procedural rights were violated at the state level is without merit since there has never been any state court ruling or hearing on those issues; although charges were originally filed in state court, the Defendants were never brought to trial on those charges in the state court system, no pre trial motions concerning the state charges were ever filed, and there has never been any prosecution or adjudication on the merits of the state case. The above-captioned indictment was not brought because the local law enforcement officers failed to prevail in state court, and there has been no showing of a policy or practice on the part of the United States Attorney to federally prosecute crimes in order to circumvent state substantive and procedural rights. The United States Attorney has articulated legitimate reasons for initiating this federal prosecution, and the Defendant has offered nothing to either refute these legitimate reasons or to indicate that the United States Attorney acted vindictively and/or in bad faith.

■ Additionally, this Court notes that prosecution of drug conspiracy charges in federal court after a state court conviction on the same charges is not an abuse of discretion and does not show prosecutorial vindictiveness. *United States v. Sellers*, 603 F.2d 53 (8th Cir.1979). Where as in this case there have been no pre trial motions filed in the state system and no trial on the underlying charges in the state system, it is not an abuse of prosecutorial discretion for the United States to obtain the above-captioned indictment. The Motion to Dismiss will therefore be denied.

## MOTION FOR DISCOVERY AND/OR PRODUCTION OF FAVORABLE EVIDENCE

Defendant Horsley seeks the pre trial disclosure of all written or recorded statements or reports which are favorable to Defendant; disclosure of all grants of immunity, plea bargains, promises and preferential treatment of witnesses, all "rap" sheets of witnesses who will testify; names and addresses of all witnesses who testified before the grand jury; the identity of all witnesses who failed to identify Defendant Horsley as a member of the alleged conspiracy; statements of the co-conspirator; and all personnel files of the undercover officer.

The government, by way of response to this Motion, has stated that it has no statements or reports discoverable under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); that there have been no grants of immunity, plea bargains, promises or preferential treatment of witnesses. The government also claims that there is no witness who was unable to identify Defendant Horsley as an alleged conspirator, and has stated that all statements by the Defendants and all statements which are discoverable under Local Rule 24 have been or will be provided. The United States has also assured that all documentation pertaining to funds used to purchase the controlled substances and/or to funds provided to the informant will be given to the Defendant. It therefore appears that the only two requests presently at issue in the Defendant's Motion for Discovery are the request for the names and addresses of the grand jury witnesses who will not be called at trial, and the request for the disclosure of the personnel files of the undercover officer.

█ With respect to the matter of the federal grand jury proceedings, it is clear that a particularized need for the disclosure must be shown for material other than that which can be obtained under the Jencks Act, 18 U.S.C. § 3500. *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966). Here the Defendant is essentially claiming that the grand jury information would reveal exculpatory evidence, and this is not sufficient to satisfy the requirement of particularized need. *United States v. Short*, 671 F.2d 178 (6th Cir.1982). The request will be denied.

With respect to the request for the disclosure of the personnel file of the undercover officer, the Defendant contends that it is a discoverable document in the possession of the United States Government. The Defendant believes that the personnel file may contain material which will be helpful in preparing for the cross examination of the undercover officer, and the Defendant contends that the defense at trial will be that the indictment was rushed through by vindictive and hostile law enforcement personnel.

█ The Defendant claims that *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973), authorizes the disclosure of the personnel file in this instance. In *Deutsch*, the Defendant moved for the personnel file of a postal employee, and in response, the United States Attorney stated that it did not have the personnel file. The trial court ruled that the prosecution could not be compelled to disclose something it did not have, and further, that the Post Office was not an arm of the prosecution contemplated by *Brady*. On appeal, the Fifth Circuit held that *Brady* did not refer to an arm of the prosecution and the government could not compartmentalize the Department of Justice and deny having access to the requested files. The *Deutsch* court stated: "We do not suggest ... that the government was obliged to obtain evidence from third parties, but there is no suggestion in *Brady* that different 'arms' of the government, particularly when so closely connect-

ed as this one for the purpose of the case, are severable entities." 475 F.2d at 57.

Here, the Government is not in possession of the personnel files of the City of Pittsburgh, and the situation is distinguishable from *Deutsch* where the agency involved was the Post Office Department. The request for production of the personnel file will be denied.

MOTION FOR DISCLOSURE OF IDENTITY AND/OR PRODUCTION OF INFORMANT

Defendant Horsley seeks the identity of the confidential informant, and while he does not specifically request in the "wherefore" clause of his motion that the informant be produced, he does allude to the production of the confidential informant elsewhere in that motion.

The Government has responded to this Motion by revealing that the informant's name is Jack Williams, a/k/a Smokey Williams, whose present address and whereabouts are unknown to the Government, and who has not been seen since the ending months of 1984. At the hearing on the motions held July 3, 1985, the Defendant took the position that because the Government could not physically produce the confidential informant, the indictment should be dismissed, or alternatively, those counts pertaining to the controlled buys during which the confidential informant was present should be dismissed. However, the Assistant United Attorney represented to this Court that it has other witnesses who are able to testify on the subject of the controlled buys, (Tr. 28), and it later reiterated that assurance to this Court. (Tr. 49). The government also assured this Court that it would continue to make affirmative efforts to locate the present whereabouts of Mr. Williams, the confidential informer. (Tr. 46).

This Court does not believe that dismissal of the indictment is the proper remedy for the inability of the Government to produce the informant. In *United States v. Valenzuela-Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), where the Defendant was charged with violating the

immigration laws, two other illegal aliens who were apprehended with the Defendant were deported after an Assistant United States Attorney determined that the two illegal aliens possessed no evidence material to the Defendant's prosecution. The United States Supreme Court held that the prompt deportation of the alien witnesses was justified by practical considerations, the government had good reasons for so doing, and that there was no hiding or concealing of witnesses by the Government. 458 U.S. at 865–66, 102 S.Ct. at 3445–46, 73 L.Ed.2d at 1201–02. The Court also held that the Defendant could not establish a violation of his constitutional right to compulsory process merely by showing that the deportation of the passengers deprived the Defendant of their testimony, some plausible showing of how their testimony would have been material and favorable was additionally required. 458 U.S. at 867, 102 S.Ct. at 3446, 73 L.Ed.2d at 1202.

The Supreme Court in *Valenzuela-Bernal* recognized that "while a defendant who has not had an opportunity to interview a witness may face a difficult task in making a showing of materiality, the task is not an impossible one. In such circumstances it is of course not possible to make any avowal of *how* a witness may testify. But the events to which a witness might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality." 458 U.S. at 871, 102 S.Ct. at 3448, 73 L.Ed.2d at 1205.

Where the Government has contributed to the unavailiability of the witnesses, the showing of favorable testimony is relaxed. *Singleton v. Lefkowitz*, 583 F.2d 618, 623 (1978). Here, however, the unavailability of the witness is due to no fault of the federal government which attempted and continues to attempt, to locate the present whereabouts of the confidential informant.

Further, there has been no showing by the Defendant that the confidential informant would provide relevant and favorable evidence. At the July 3, 1985 hearing, the Defendant claimed that the transcript of the detention hearing before the United States Magistrate and the transcript of the preliminary hearing before the state court magistrate reveal a discrepancy in the amount of heroin involved in the purchases the informant made from Howard Horsley and Billy Johnson. (Tr. 41–46). However, these alleged discrepancies are not favorable to the defense, and it cannot be exculpatory or material in nature because the quantity of the heroin involved is irrelevant to the charges; the relevant issue is whether or not the Defendant Howard Horsley distributed or possessed with the intent to distribute heroin, a Schedule I narcotic drug controlled substance. Accordingly, the Motion will be denied.

## MOTION FOR BILL OF PARTICULARS

## MOTION FOR EARLY DISCLOSURE OF JENCKS MATERIAL

It is unclear from representations made at the July 3, 1985 hearing whether the requested information pertaining to these motions has been provided, or whether the Defendant actively continues to pursue these motions. (See Tr. at 50). In any event, the Motions will be denied. The indictment in the above-captioned case is not so vague, indefinite or general that it fails to apprise the Defendant of the nature of the charges pending against him, since the substantive counts allege the date and nature of the alleged criminal activity of the Defendant, and the conspiracy count sufficiently alleges the existence of the conspiracy to distribute heroin, the time period during which the conspiracy was allegedly operative, and the statute which was being violated. It is not necessary for the Government to either allege or prove an overt act in furtherance of a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841.

The Motion for Bill of Particulars will be denied.

With respect to the early disclosure of Jencks material, the Jencks Act, 18 U.S.C. § 3500, does not require the Govern-

ment to produce the material prior to the time a witness testifies. The Court declines to order the pre trial disclosure of such material. The Motion will be denied.

## MOTION FOR SEVERANCE

The Defendant Charlotte Johnson has moved to sever her trial from that of the co-defendant Howard Horsley, contending that the Government will introduce post-arrest statements of the co-defendants as admissions; that she will be prejudiced by the extensive criminal record of the co-defendant; and that her involvement in the alleged criminal acts is minimal as compared to the involvement of the co-defendant Howard Horsley. The Defendant Howard Horsley also joins in the Motion for Severance.

Rule 14 of the Federal Rules of Criminal Procedure permits a severance of defendants, if joinder of the defendants is prejudicial either to a defendant or to the Government. Rule 8(b) of the Federal Rules of Criminal Procedure permits two or more defendants to be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the offense.

■ A motion for severance is addressed to the sound discretion of the trial court, and upon appellate review, a Defendant will gain relief only if he satisfies the heavy burden of proving that the trial court's decision was an abuse of discretion which denied him the right to a fair trial. *United States v. Boscia,* 573 F.2d 827, 832 (3d Cir.1978); *United States v. Rosa,* 560 F.2d 149 (3d Cir.1977); *United States v. Sommers,* 496 F.2d 723 (3d Cir.1974); *United States v. Armocida,* 515 F.2d 29 (3d Cir.1975).

■ Persons jointly indicted will be tried together unless there is a clear and substantial showing that a Defendant will be so severely prejudiced that the right to a fair trial would be denied. Where the Government charges multiple defendants with a single conspiracy, the interests of judicial economy usually favor a single trial. A severance is also not required where it is possible that evidence will be admissible against some but not all of the Defendants. *United States v. Dickens,* 695 F.2d 765 (3d Cir.1982); *United States v. Jackson,* 649 F.2d 967 (3d Cir.1981); *United States v. Kenny,* 462 F.2d 1205 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

■ In the instant case, count one of the indictment charges both Defendants with conspiracy to distribute heroin, and counts five, six and seven charge both of the Defendants with distribution of heroin and the possession of it with the intent to distribute it. Proof of direct involvement in the actual transfer of heroin is not necessary for a conviction on the conspiracy count, and with reference to Counts 5, 6, and 7, where both of the Defendants are charged, it is also possible for the Defendant Johnson to be found guilty as an aider and abettor without proof that she actually did every act constituting the offense charged. Defendant Johnson's claim that a severance should be granted because her degree of participation is minimal as compared to Defendant Horsley's participation is of no merit.

The Defendant Johnson has not shown that she will be severely prejudiced by a joint trial. Under proper instructions by this Court, the jury will be able to separate the evidence and render a fair verdict as to each Defendant. The fact that evidence against one Defendant may be stronger than the evidence against another Defendant is not a sufficient reason to compel a severance, nor is the fact that a co-defendant has a criminal record a sufficient reason for a severance. *United States v. Witschner,* 624 F.2d 840, 845 (8th Cir.1980); *United States v. Dalzotto,* 603 F.2d 642, 646 (7th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979); *United States v. Dansker,* 537 F.2d 40 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *United States v. Bazinet,* 462 F.2d 982, 992 (8th Cir.), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 453, 34

L.Ed.2d 303 (1972). However, if prejudice to either of the Defendants does develop during the course of the trial, the Court may properly grant a severance at that time. The Motion for Severance will be denied.

## MOTION TO SUPPRESS

The Defendant Horsley has moved to suppress evidence seized on or about December 12, 1984 upon the execution of search and arrest warrants issued by a magistrate of the City of Pittsburgh. The Defendant contends that the arrest warrants were obtained in violation of the Pennsylvania Rules of Criminal Procedure which require that an affidavit be attached; that the search warrant contains material misrepresentations of fact; that probable cause for the issuance of the search warrant was lacking, and that the probable cause section of the search warrant affidavit was impermissibly based on hearsay and on an unreliable informant.

With respect to the Defendant's claim that the arrest warrant is defective since there was no affidavit of probable cause, this Court noted that Rule 119(a) of the Pennsylvania Rules of Criminal Procedure does require that an arrest warrant must be supported by one or more affidavits sworn to before the issuing authority. However, the Comment to that rule specifically states: "Where a properly sworn to complaint contains a statement of facts and circumstances sufficient to establish probable cause for the issuance of the arrest warrant, it may serve as the affidavit." Here Benny Sledge did swear to the criminal complaint, which clearly sets forth instances of deliveries by Horsley of controlled substances to the undercover officer Sledge. There were sufficient facts and circumstances to establish probable cause for the issuance of the arrest warrant

### A. Probable Cause for the Issuance of the Search Warrant

The Fourth Amendment requirement of probable cause for the issuance of a warrant must be applied in the light of the totality of the circumstances made known to the magistrate. A reviewing court may not undertake a de novo determination of probable cause, and should determine only whether there is substantial evidence to support the magistrate's decision to issue the warrant. In so doing, the Court must pay great deference to the magistrate's determination of probable cause, and must interpret the supporting affidavits in a commonsense manner. *Illinois v. Gates,* 462 U.S. 213, 236 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 547 (1983). The Supreme Court reiterated in *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) that the totality of the circumstances test is the proper standard for determining the existence of probable cause under the Fourth Amendment.

Probable cause may be founded upon hearsay and upon information received from informants, as well as information that is within the affiant's own knowledge. *Franks v. Delaware,* 438 U.S. 154, 165, 2681, 98 S.Ct. 2674, 57 L.Ed.2d 667, 678 (1978). In the application for the search warrant in this case, Beverly Stewart, the affiant, based her probable cause belief on the following:

During the week of 12/10/84, this affiant received information from a confidential and reliable source who stated that Howard Horsley is the main dealer of heroin in the City of Pittsburgh.: Howard sells heroin on the streest [sic] mostly, but he keeps his stashes of heroin all over the city at different locations. At 7947 Thon Dr. this C.I. stated Howard has dope (heroin) here. On rare occassions [sic], Howard will sell the heroin from the above location. On 5/17/84–5/21/84–7/18/84–7/25/84, U.Co. B. Sledge went to the above location and did obtain heroin in exchange for items listed on this report. The C.I. has had conversation with Horsley with-in the last 48 hrs. The C.I. reported to police, now that one of his girlfriends has been arrested, he is keeping his heroin at this location. Charlotte Johnson also resides here with her daughter. Ms. Johnson aides [sic] Howard in keeping all monies

from the sales of the narcotics. This C.I. was at the above location, with-in the last 48 hrs. of this report. Also, Howard is into cocaine and sells it as well as the heroin. The C.I. stated that cocaine might be in the residence. All items were exchanged for heroin and given to U.Co. B. Sledge. This C.I. further stated, Horsley drives a blue Jaguar, which is parked at this location with license plate no # GHU–378; Horsley has several vehicles as reported to the police. This confidential and reliable informant is reliable because in the past this C.I. has given information which led to the arrests and convictions of approx. five persons, for VCSDD&CA Heroin. Also, in the future there will be approx. six arrests made from the information given to police by this C.I. Chuckie Dial 4/27/83–10/12/83, Darryl Ward (5/24/84–) 7/7/84 arrests VCSDD&CA heroin on both cases. Wards case is still pending. All future arrests will be for VCSDD&CA heroin, and cocaine. This C.I. reports, Horsley packages his heroin in balloons and sells them for $20.00 a bag (Balloon). The C.I. has seen how heroin and cocaine are packaged and sold in the past and in a bundle, there are 15 balloons.

Court Exhibit A.

■ The commonsense interpretation of the information contained in the application for search warrant and affidavit compels the conclusion that in the totality of the circumstances there was probable cause for the issuing magistrate to believe that a crime had been or was being committed by the Defendant and that controlled substances were at the place to be searched. The magistrate could properly conclude from the affidavit that Horsley had sold heroin in the past, that in preceeding months Horsley sold heroin from the premises to be searched to an undercover officer, and that within 48 hours of the application for the search warrant the confidential informant was at the premises to be searched and as a result had reason to believe that controlled substances were on the premises. There was probable cause for the issuance of the search warrant.

### B. Material Misrepresentations in the Affidavit for Probable Cause.

The defendant alleges that the affidavit for probable cause contains material misrepresentations and alleges that the following statement contained in the affidavit in support of probable cause is false: "On 5/17/84–5/21/84–7/18/84–7/25/84, U.Co. B. Sledge went to the above location and did obtain heroin in exchange for items listed on this report."

Detective Benny Sledge testified at the July 3, 1985 pre trial hearing that on May 17, 1984, he drove Mr. Horsley to Horsley's residence at 7947 Thon Drive in Penn Hills, and while enroute to the residence Defendant Horsley gave him seven balloons of heroin in exchange for a VHS recorder which Horsley removed from the car and took into his residence on Thon Drive. (Tr. 68–69). Sledge also testified that on May 21, 1984, Sledge went to Horsley's residence at 7947 Thon Drive with a television set, and while Sledge was in Horsley's dining room, Horsley gave him five balloons of heroin in exchange for the television set. (Tr. 69). Sledge further testified that on July 18, 1984, Sledge exchanged clothing for heroin at the Thon Drive residence, and finally, that on July 25, 1984, Sledge went to Horsley's house and Horsley took Sledge to the residence of Gloria Ritley in East Hills, where Horsley went in, brought heroin out, and gave it to Sledge, after which Sledge drove Horsley back to the residence on Thon Drive. (Tr. 70–71).

The Defendant argues that the affidavit contained material misrepresentations of fact since not all of the transactions took place in the Thon Drive, Penn Hills residence.

■ *Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667, 682 (1978), holds that a Defendant must establish that an affiant knowingly and intentionally or with reckless disregard for the truth, made a false statement. The search would then be voided only if the

affidavit, without the false material, is insufficient to establish probable cause. Here, on all of the dates specified, Sledge did go to Horsley's residence on Thon Drive in Penn Hills, and on two of these occasions Sledge did obtain heroin which actually was at and inside the Thon Drive, Penn Hills residence. There was no material misrepresentations of facts stated in the affidavit which would void the search warrant under the principles enunciated by the Supreme Court in *Franks v. Delaware, supra.*

## C. *Credibility of the Informant*

The Defendant claims that the affidavit is insufficient to establish the reliability of the confidential informant because the affidavit does not set forth the names and dates of the persons arrested and/or convicted as a result of information given by the confidential informant. Defendant contends that arrests which had not occurred as of the date of the issuance of the warrant are insufficient to establish the reliability of the informant. The Defendant also takes issue with statements in the warrant which the Defendant claims are conclusory, unreliable, unsubstantiated and insufficient.

The Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2327–28, 76 L.Ed.2d 527, 543 (1983), pointed out that an informant's "veracity", "reliability", and "basis of knowledge" are highly relevant in assessing an informant's reliability, but stated that these elements should not be understood to be entirely separate and independent requirements which must be rigidly exacted in each case. The Supreme Court noted that probable cause is a fluid concept, not readily reducible to a set of legal rules, and it therefore adopted the totality of the circumstances approach as the standard for assessing the reliability of the informant, and clearly rejected the application of the two-pronged test that had been derived from *Aguilar v. Texas,* 378 U.S. 198, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). With respect to the reliability of an informant, the Supreme Court stated in *Illinois v. Gates,* supra:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. [Citation omitted]. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. [Citation omitted]. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case. Unlike a totality-of-the-circumstances analysis, which permits a balanced assessment of the relative weight of all of the various indicia of reliability (and unreliability) attending an informant's tip, the "two-pronged test" has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.

462 U.S. at 233–34, 103 S.Ct. at 2328–29, 76 L.Ed.2d at 545 (Footnote omitted).

■ Here the affidavit of probable cause states that in the past the confidential informer gave information leading to the arrest and convictions of five persons for heroin trafficking, and specifically names two person involved in heroin trafficking. The affidavit also establishes that the informant had conversations with Horsley in the last 48 hours, the informant was in the residence to be searched within that time period, and the informant believed that heroin and cocaine might be in the residence. The affidavit contains more than a conclusory statement that the infor-

mation was received from a reliable informant, and in addition to the information received from the informant (who had previously given information leading to arrest and conviction of heroin traffickers), the undercover officer B. Sledge on at least two occasions had obtained heroin from Horsley at the Thon Drive residence. From all of the circumstances set forth in the affidavit, including the past reliability of the informant and the fact that the informant had recently been in contact with Horsley at the Thon Drive residence, there was a substantial basis for the magistrate to conclude that there was probable cause to believe that controlled substances would be found at the Thon Drive residence. The Motion to Suppress will be denied.

The Motions filed by the Defendants will all be denied, and an appropriate Order will be entered.